IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FRANK D. HEABLER, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 C 6193 |
| | ) | |
| LISA MADIGAN, in her Official Capacity | ) | Judge John J. Tharp, Jr. |
| as Attorney General of the State of Illinois; | ) | |
| JAY STEWART, in his Official Capacity | ) | |
| as Director of the Division of Professional | ) | |
| Regulation of the Illinois Department of | ) | |
| Financial and Professional Regulation; and | ) | |
| BRENT ADAMS, in his Official Capacity | ) | |
| as Secretary of the Illinois Department of | ) | |
| Financial and Professional Regulation | ) | |
| | ) | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

This case concerns the constitutionality of the descriptively, if awkwardly, named "Illinois Private Detective, Private Alarm, Private Security, Fingerprint Vendor, and Locksmith Act of 2004" (henceforth shortened to "IPDA"), 225 Ill. Comp. Stat. 447/5 to 447/99-5. The plaintiff filed this suit against three Illinois state officers in their official capacities, seeking a declaration that Section 40-10(a)(3) of the statute is unconstitutional and to enjoin enforcement of the statute against him. Pending before the Court is the defendants' motion to dismiss for lack of jurisdiction and failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons that follow, the Court grants the defendants' motion to dismiss.

### BACKGROUND

Frank D. Heabler, the plaintiff, is a private detective and private security contractor licensed by the Illinois Department of Financial and Professional Regulation ("IDFPR").

Compl. ¶ 8. On November 4, 2008, Heabler had an encounter with police officers in the Village of Rosemont, Illinois, that led to the IDFPR issuing a formal reprimand on his private detective license. As Heabler recounts the incident (and it is his account that must be credited on a motion to dismiss),[1] he had pulled over on Mannheim Road in Rosemont to check whether cab drivers parked on the shoulder needed assistance. *Id.* ¶ 16. As he backed out to leave, he pulled onto the raised bank to avoid colliding with another car, driven by someone who honked the horn and yelled. *Id.* ¶ 17. Once the car passed, Heabler drove on. He eventually stopped at a red light alongside the same car, which turned out to be an unmarked police car. Heabler alleges that the driver of the unmarked police car, a Rosemont police officer, yelled obscenities at Heabler and pulled him over. *Id.* ¶¶ 18–19. After the police officer asked if Heabler had any weapons, Heabler replied affirmatively and disclosed his status as a private detective authorized to carry guns. *Id.* ¶¶ 20–21. The police officer had Heabler exit his vehicle and handcuffed him before other officers searched his car and confiscated his guns. The officers then transported Heabler to the Rosemont Police Department for questioning. Heabler was released the next day with a traffic citation. *Id.* ¶¶ 21–23.

Based on the encounter, the IDFPR initiated an administrative disciplinary action against Heabler's professional licenses under the authority granted to it by the IPDA, 225 Ill. Comp. Stat. 447/5 to 99-5. The IPDA generally sets out licensing requirements, required business

---

[1] In reviewing a motion to dismiss, the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiffs. *Erickson v. Pardus*, 551 U.S. 89, 127 (2007); *Transit Exp., Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001). However, the Court does not accept as true any allegations that are mere legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 679–80 (2009). When a motion to dismiss challenges the court's subject matter jurisdiction, the court may look beyond the complaint and consider evidence on whether in fact subject matter jurisdiction exists. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009).

practices, and disciplinary measures applicable to private detectives, private alarm contractors, private security contractors, locksmiths, and fingerprint vendors. *Id.* As the statute states, the intent behind the IPDA is to "protect the public" by regulating the people and entities whose practices "affect the public health, safety, and welfare and are subject to State regulation and licensure." 447/5-15. Section 40-10 empowers the "Department," defined by 447/5-3 as the IDFPR, to discipline those governed by the Act. It lists twenty-six potential violations for which the IDFPR may impose sanctions, including "[e]ngaging in dishonorable, unethical, or unprofessional conduct of a character likely to deceive, defraud, or harm the public." 447/40-10(a)(3). Potential sanctions include the denial, suspension, revocation, non-renewal, or non-issuance of a license, or the imposition of a reprimand or fine. 447/40-10.

A disciplinary proceeding to impose sanctions under Section 447/10-10 is initiated when the IDFPR gives notice to the affected license holder and sets a hearing on the pending charges. 447/45-10(b), (c). The hearing is conducted either by a hearing officer appointed by the Secretary of the Department of Financial and Professional Regulation ("Secretary") or by the Private Detective, Private Alarm, Private Security, Fingerprint Vendor, and Locksmith Board ("Board"), a thirteen-member body composed primarily of professionals experienced in the industries regulated by the IPDA. 447/45-10(c), (e), 50-10. The hearing officer and the Board then prepare reports for the Secretary containing their finding of whether the license holder committed a sanctionable violation and a recommendation. 447/45-15(a). If the Secretary disagrees with the Board's recommendation, the Secretary may issue an order contrary to its report. 447/45-15(c). Once the Secretary issues an order imposing sanctions, the affected license holder may move for a rehearing. 447/45-15(b). All final orders are subject to judicial review in

the circuit court of the county in which the party applying for review resides, governed by the Illinois Administrative Procedure Act. 447/45-40, 50-45.

The IDFPR disciplinary action against Heabler began on November 26, 2008, with a Complaint that alleged that Heabler exhibited "unethical, unprofessional and dishonorable conduct" by acting in an "out of control" and "explosive" manner by shouting obscenities at the police officer he encountered in Rosemont earlier that month. Compl. Ex. A. at 2–3. The IDFPR also alleged that Heabler misrepresented how many guns he was carrying; the true number, according to its Complaint, together with his behavior constituted "a danger to the public."[2] *Id.* at 2–4. On April 2 and 3, 2009, the IDFPR conducted a formal evidentiary hearing, at which Heabler was represented by the same attorney that represents him here. Compl. Ex. B at 2–3. On May 13, 2009, Administrative Law Judge John M. Lagattuta, the hearing officer, issued a Report and Recommendation advising that Heabler should be reprimanded and fined $5000. *Id.* at 23–24. Although the Board filed a Report that disagreed and advised against disciplining Heabler, the Director of the Division of Professional Regulation of the IDFPR ordered that Heabler's private detective license be reprimanded on November 6, 2009. Compl. Exs. C, D. Heabler sought judicial review, and the Circuit Court of Cook County affirmed the IDFPR decision on December 7, 2010. Mem. Supp. Mot. Ex. 1, Dkt. 11-1. Heabler appealed that decision to the Illinois Appellate Court on July 12, 2011. *Id.* Ex. 3, Dkt. 11-3.

---

[2] According to the IDFPR Complaint, Heabler told the arresting officer that he had one firearm in his car. When the officer searched the car, however, he found five additional firearms, including an automatic rifle loaded with 43 rounds, three revolvers, a taser, and about 300 additional rounds of ammunition. When interviewed at the police station, Heabler told police that he had so many weapons in his position because he "wanted to be ready just in case there was any trouble during the night of the election."

On August 7, 2012, while his appeal was pending, Heabler initiated this case in federal court by filing a complaint against three defendants in their official capacities: Illinois Attorney General Lisa Madigan, Director of the Division of Professional Regulation of the IDFPR Jay Stewart, and Secretary of the IDFPR Brent Adams. Heabler seeks a declaration that the IPDA is unconstitutionally vague on its face and as applied to him (Count I). He also requests preliminary and permanent injunctions ordering the IDFPR to expunge the reprimand on his license and remove any public references to it in IDFPR publications (Count II). Finally, he seeks an award of costs.

The defendants filed this motion to dismiss for lack of jurisdiction and for failure to state a claim on October 9, 2012. While this motion was pending, Heabler lost his state appeal, leaving the Illinois trial court's affirmance of the IDFPR decision intact. Mot. Supp. R. Ex. A, Dkt. 18-1. On July 3, 2013, the Supreme Court of Illinois denied Heabler leave to appeal. Mot. Supp. R. Ex. B, Dkt. 22.[3]

## DISCUSSION

Given the interrelationship of the theories raised by the parties, it is useful to first clarify the requests before the Court. In his Complaint, Heabler alleges that Section 40-10(a)(3) of the IPDA is unconstitutional both on its face and as applied to him. On those two bases, he seeks to have the statute declared unconstitutional and all reference to his reprimand removed from the public record. The defendants have moved to dismiss the entire case under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). They argue that: (1) Heabler's claims are barred by the

---

[3] The state court rejection of Heabler's challenges to the statute might give rise to additional grounds on which the defendants might seek to dismiss Heabler's claims, including, for example, *res judicata*. In view of the Court's determination that the complaint must be dismissed on other grounds, however, the Court has not invited supplementation of the motion to dismiss or the parties' briefs.

5

Eleventh Amendment because they name an impermissible party (Attorney General Madigan) and request impermissible retrospective relief; (2) this Court should abstain from exercising its jurisdiction under *Younger v. Harris*, 401 U.S. 37 (1971), to avoid interfering with ongoing state proceedings related to Heabler's reprimand; (3) Heabler's § 1983 claims are barred by the statute of limitations; and (4) Heabler fails to state a claim.

Heabler's as-applied and facial challenges to the IPDA are intertwined; as a result of the alleged vagueness of the statute, he wants his past disciplinary record expunged. In assessing whether this case should be dismissed, the Court is mindful of the Seventh Circuit's observation that facial and as-applied challenges "can overlap conceptually." *Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 475 (7th Cir. 2012) (citing *Doe v. Reed*, 130 S. Ct. 2811, 2817 (2010); Richard Fallon, *As-Applied and Facial Challenges and Third-Party Standing*, 113 Harv. L. Rev. 1321, 1341 (2000)).

The Eleventh Amendment bars suits against unconsenting states. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Suits against state actors in their official capacities, which function as a suit against the state, are also generally barred by the Eleventh Amendment. *Id.* at 101–02. Individual state actors may nevertheless be subject to suit in their official capacities under the exception set forth in *Ex parte Young*, 209 U.S. 123 (1908). The *Ex parte Young* exception allows suits for prospective injunctive relief that challenge a state official's actions as unconstitutional under the theory that an unconstitutional state enactment is void and "strip[s] the state officer of his official authority." *Pennhurst*, 465 U.S. at 103; *see also Ex parte Young*, 209 U.S. at 159–60. For this exception to apply, the Supreme Court requires the defendant to have "some connection with the enforcement of the act" and be threatening "to

commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act." *Ex parte Young*, 209 U.S. at 156–58.

Courts have not interpreted *Ex parte Young* expansively. *See Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996) (collecting cases), *cert. denied*, 519 U.S. 1149 (1997). The defendants argue that the Eleventh Amendment bars this claim against Attorney General Madigan because she lacks the requisite connection with enforcement of the statute and accordingly has never threatened to prosecute Heabler under the statute. Heabler contends that Madigan is a proper defendant because in her role as the Illinois Attorney General, she is responsible for executing and administering the laws of Illinois. The Seventh Circuit has held that an attorney general's broad power to enforce the laws of a state is insufficient on its own to make that attorney general subject to suit. *Sherman v. Cmty. Consol. Sch. Dist. 21 of Wheeling Twp.*, 980 F.2d 437, 441 (7th Cir. 1992); *see also Weinstein v. Edgar*, 826 F. Supp. 1165, 1166 (N.D. Ill. 1993). As the Supreme Court observed in *Ex parte Young*:

> If, because they were law officers of the state, a case could be made for the purpose of testing the constitutionality of the statute, by an injunction suit brought against them, then the constitutionality of every act passed by the legislature could be tested by a suit against the governor and the attorney general, based upon the theory that the former, as the executive of the state, was, in a general sense, charged with the execution of all its laws, and the latter, as attorney general, might represent the state in litigation involving the enforcement of its statutes. That would be a very convenient way for obtaining a speedy judicial determination of questions of constitutional law which may be raised by individuals, but it is a mode which cannot be applied to the states of the Union consistently with the fundamental principle that they cannot, without their assent, be brought into any court at the suit of private persons.

209 U.S. at 157 (quoting *Smyth v. Ames*, 169 U.S. 466, 530 (1898)). Attorney General Madigan's general authority over Illinois law thus does not alone render her a proper defendant here.

If the IPDA's penalty provisions implicated Attorney General Madigan's concurrent power to enforce Illinois law, however, there might be an argument that the *Ex parte Young* exception applies. *See Entm't Software Ass'n v. Blagojevich*, 469 F.3d 641, 645 (7th Cir. 2006). In *Blagojevich*, the Seventh Circuit rejected the Illinois Attorney General's invocation of sovereign immunity where she conceded that she had the power to enforce the statute at issue, holding that her concurrent power "satisfies the 'some connection' requirement of *Ex parte Young*." *Id.* In *Sherman*, by contrast, the Seventh Circuit rejected the idea that the state Attorney General's concurrent law enforcement powers are a sufficient basis to apply *Ex parte Young* where the statute included no penalty provision that would be enforced by the Attorney General. *Sherman*, 980 F.2d at 441. *Sherman* governs here, because the state's Attorney General has no authority to enforce the penalty provisions of the IPDA. The IPDA expressly vests enforcement authority in the IDFPR and the Secretary of Financial and Professional Regulation, not the Attorney General. *See* 225 Ill. Comp. Stat. 447/5-3 (defining references to "Department" and "Director" in the IPDA). Most relevant to this case, the authority to take disciplinary action, such as issuing a reprimand on a private investigator's license, is vested in the IDFPR. *See* 225 Ill. Comp. Stat. 447/40-10(a). Indeed, it was the IDFPR that initiated the investigation into Heabler and the Director of the Division of Professional Regulation that issued the resulting reprimand. Compl. Exs. A–D. Thus, Attorney General Madigan's invocation of sovereign immunity is warranted and dismissal of the claim against her required.

The vesting of IPDA enforcement authority with the IDFPR, however, means that the defendant officials from that agency are properly within the plaintiff's sights. As the Director of the Division of Professional Regulation of the IDFPR and the Secretary of the IDFPR, defendants Stewart and Adams do not argue that they lack the requisite statutory connection.

Def.'s Reply, Dkt. 16 at 2. Consequently, the Eleventh Amendment inquiry turns to whether, with respect to these defendants, Heabler has satisfied the second requirement of the *Ex parte Young* exception by requesting permissible relief.

As the Supreme Court has noted, "the difference between the type of relief barred by the Eleventh Amendment and that permitted under *Ex parte Young* will not in many instances be that between day and night." *Edelman v. Jordan*, 415 U.S. 651, 667 (1974). In *Edelman*, the Court barred the retroactive payment of government benefits that were found to have been wrongfully withheld, *id.* at 667–70, and in subsequent cases the dividing line that has emerged between permissible and impermissible *Ex parte Young* relief is whether the relief sought is prospective or retrospective. The former is permitted; the latter is not. In assessing assertions of sovereign immunity under the Eleventh Amendment, then, courts are to conduct a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and concurring in judgment)).

The parties agree that *Ex parte Young* actions are limited to requests for prospective relief, but they do not agree on how to properly characterize the relief that Heabler seeks. The defendants argue that Heabler seeks to retroactively enjoin the IDFPR from imposing discipline on his license; Heabler disagrees, pointing to the ongoing display of the reprimand on his license as a continuing violation that he wants this Court to enjoin. Heabler does not seek retrospective money damages for the business he may have lost due to the public reprimand, so his case does not quite mirror the situation in *Edelman*. *See Am. Soc. of Consultant Pharmacists v. Patla*, 138 F. Supp. 2d 1062, 1070 (N.D. Ill. 2001) (distinguishing between a challenge to continuing

9

application of a rule and a demand for retroactive compensation for losses caused by past applications of the rule). Instead, he seeks to stop the "enforcement" of an "unconstitutional statute," where he equates "continued enforcement," at least in part, with the "perpetual display of a reprimand" on his license. Compl. ¶¶ 4–5, 45–46, 53; Pl.'s Resp., Dkt. 14, at 4.

The "overriding question" to determine whether relief sought is prospective or not is "whether the relief will 'remedy future rather than past wrongs.'" *Elephant Butte Irr. Dist. of New Mexico v. Dep't of Interior*, 160 F.3d 602, 611 (10th Cir. 1998) (citation omitted). Heabler seeks to remove public mention of his prior discipline; he does not seek to prevent additional disciplinary proceedings to enforce the statute. In this way, he primarily shows concern over how the statute *was* applied to him, not how it *will be* applied to him in the future. *See, e.g.*, Pl.'s Resp., Dkt. 14, at 10. But to the extent that Heabler alleges that *any* enforcement of the IPDA is unconstitutional, such a facial challenge to the statute's constitutionality appears to satisfy the *Ex parte Young* requirement that the action seek prospective relief. *See, e.g.*, *Blagojevich*, 469 F.3d at 645 (allowing a facial challenge to the constitutionality of a state statute regulating the sale of sexually explicit video games). In this way, Heabler's facial challenge demands sufficient prospective relief to overcome the Eleventh Amendment bar to suit.

That said, where the "claim and the relief that would follow" extend beyond a plaintiff's circumstances, the plaintiff must "satisfy [the] standards for a facial challenge to the extent of that reach." *Ctr. for Individual Freedom*, 697 F.3d at 475 (quoting *Reed*, 130 S. Ct. at 2817). "[A] plaintiff can only succeed in a facial challenge by establish[ing] that no set of circumstances exists under which the Act would be valid, *i.e.*, that the law is unconstitutional in all of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (quoting *United States v. Salerno*, 481 U.S. 739 (1987)). Where a statute has a "plainly

10

legitimate sweep," a facial challenge fails. *Id.* (quoting *Washington v. Glucksberg*, 521 U.S. 702, 739, 740 & n. 7 (1997) (Stevens, J., concurring in judgments)). The theory that Heabler invokes, the void-for-vagueness doctrine, protects against laws that fail "to provide a person of ordinary intelligence fair notice of what is prohibited, or [are] so standardless that it authorizes or encourages seriously discriminatory enforcement." *FCC v. Fox Television Stations, Inc.*, 132 S. Ct. 2307, 2317 (2012) (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)); *see also Sherman ex rel. Sherman v. Koch*, 623 F.3d 501, 519 (7th Cir. 2010). Under this doctrine, a statute that implicates First Amendment freedoms may be invalidated by a facial attack if the "potential chilling effect on protected expression" is "real and substantial." *Ctr. for Individual Freedom*, 697 F.3d at 478–79 (quoting *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216 (1975)).

Heabler alleges that the "unprofessional conduct" that may be sanctioned under Section 447/40-10(a)(3) of the IPDA is so vague as to be "unascertainable." Compl. ¶ 15. In line with that allegation, his complaint concludes that the IPDA is facially unconstitutional because "there is no circumstance" in which it "would give fair notice of what conduct is prohibited." *Id.* ¶ 40. To support this allegation in the context of sanctioning private detectives, Heabler cites the lack of objective professional standards for licensed private detectives in Illinois, the lack of specific education requirements, and the lack of a statutory definition of "unprofessional conduct." *Id.* ¶¶ 29–31, 34. Yet elsewhere in his complaint, Heabler points out that the IPDA's statement of legislative intent provides "guidance" that the term should be interpreted to "carry out the purpose of protecting the public." *Id.* ¶ 40. Additionally, he concedes that the IPDA advises that "those [circumstances] that present a danger to the public" may be "unprofessional." *Id.* ¶ 36. Heabler's identification of this limiting principle undermines his attempt to state a claim that

challenges the facial constitutionality of the statute.[4] Using a similar rationale, courts have frequently upheld similar disciplinary statutes against such challenges, one explicitly stating that "[w]hen combined with the legislative purpose of protecting the public from people unfit to practice, the term 'unprofessional conduct' provides fair notice to licensed professionals and is not unconstitutionally vague." *Chastek v. Anderson*, 83 Ill. 2d 502, 507, 509 416 N.E.2d 247, 249, 251 (1981) (collecting cases). Thus, even taking the allegations in the complaint as true, Heabler fails to reconcile his acknowledgement that the statute has a legitimate sweep to protect public safety with his attempt to state a facial challenge.[5] Accordingly, Heabler has failed to state a facial challenge to the IPDA.

At bottom, Heabler's feeble facial challenge appears to be little more than an effort to mask his real aim: to undo how the IPDA was applied to him. *See* Compl. ¶ 35 ("Therefore, Plaintiff Heabler had no way of knowing . . . that his conduct on November 4, 2008 was considered unprofessional or would subject him to discipline."). But when his "as-applied" challenge is fully developed, Heabler's claim fails to satisfy the *Ex parte Young* requirement for prospective relief of an ongoing violation. *See Sonnleitner v. York*, 304 F.3d 704, 718 (7th Cir. 2002) (holding official capacity claims barred by the Eleventh Amendment where the underlying violation could not reasonably be construed as ongoing). A plaintiff who is not suffering ongoing mistreatment and is not in danger of future mistreatment may not invoke *Ex parte Young* to seek an injunction. *See Vickery v. Jones*, 100 F.3d 1334, 1347 (7th Cir. 1996) (requiring an "ongoing

---

[4] Heabler also appears to have admitted in state court that lying to police officers would "'obviously' constitute unprofessional conduct," Defs.' Mem. Ex. C, Dkt. 11-3, at 15, though this admission is not critical to the determination of the motion before this Court.

[5] To the extent Heabler seeks to incorporate First Amendment concerns into his attempted vagueness challenge, that effort fails because Heabler does not allege that the IPDA chills protected expression. *See Ctr. for Individual Freedom*, 697 F.3d at 479.

or threatened violation of federal law"); *Garcia v. City of Chicago*, 24 F.3d 966, 969 (7th Cir. 1994) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983)). Heabler does not allege that he is in danger of new disciplinary proceedings or future illegal treatment. Nor does he show some basis to believe that the statute would be applied in similar circumstances in the future. *See Sierakowski v. Ryan*, 98 C 7088, 1999 WL 286290, at *3 (N.D. Ill. Apr. 27, 1999), *aff'd*, 223 F.3d 440 (7th Cir. 2000). This is not a situation likely to recur with any frequency; Heabler does not seek to widen the scope of permissible conduct generally. *See, e.g.*, *Ctr. for Individual Freedom*, 697 F.3d at 474 (permitting a plaintiff that had claimed to self-censor to challenge a campaign disclosure requirement statute); *see also Wolfe v. Strankman*, 392 F.3d 358, 364 (9th Cir. 2004) (noting that a plaintiff whose conduct had previously triggered a vexatious litigant statute would likely do so again and could therefore challenge its reach). Rather, Heabler is complaining about how the statute was enforced against him at one point in time and the penalties imposed on him as a result of that enforcement. As one court put it, "by its very nature, a past violation tends to implicate retroactive, as opposed to prospective relief." *Peterson v. United States*, 02 C 5996, 2003 WL 22053622 (N.D. Ill. Sept. 2, 2003). Heabler wants to remediate what he believes is a past violation, and that is not a suit seeking prospective relief.

Even if it were, Heabler's as-applied challenge would fail to clear another obstacle, namely the statute of limitations for § 1983 actions. Courts look to the law of the state in which the injury occurred to determine the statute of limitations in a § 1983 case. *Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993). Illinois has a two-year statute of limitations for personal injury claims, 735 Ill. Comp. Stat. 5/13-202, therefore, Heabler's § 1983 claim must have been brought within two years of accrual. Accrual occurs "when the plaintiff knows or should know that his . . . constitutional rights have been violated." *Kelly*, 4 F.3d at 511. Heabler's

alleged violation—the imposition of the reprimand on his license—occurred in 2009. His federal case was filed in 2012, well beyond the date permitted by the statute of limitations.

To avoid this rule, Heabler attempts to frame the display of his reprimand as a continuing violation, citing *Builder's Association of Greater Chicago v. City of Chicago*, 2001 WL 1464757, at *2 (N.D. Ill. Nov. 16, 2001).[6] In *Builder's Association*, the court allowed a constitutional challenge to a city procurement program to proceed because the plaintiff association alleged that its members regularly submitted bids under the procurement program and would again in the future. 2001 WL 1464757, at *2. The association sought to affect future procurement decisions, not to invalidate prior decisions. *Id.* Here, Heabler is unable to identify future disciplinary proceedings threatened against him; what he complains of is the lingering effect of his prior penalty. His focus on the display of the reprimand does not help him: the "persisting effect" of past violations "does not affect the running of the statute of limitations." *Pitts v. City of Kankakee, Ill.*, 267 F.3d 592, 597 (7th Cir. 2001). In *Pitts*, the Seventh Circuit held that the ongoing display of a sign declaring the plaintiffs' property "SLUM PROPERTY" in an allegedly retaliatory act for the plaintiffs' exercise of protected speech was a "lingering effect" of the initial posting and not a "fresh act" of illegal retaliation. *Id.* at 596–97 (citing the rule that a cause of action for libel is complete at first publication). The public record of Heabler's 2009 reprimand is similarly a lingering effect of the reprimand having occurred in the first place, not a fresh act of enforcement. Any similar penalty may have such ongoing effects,

---

[6] Heabler does not argue that his claim was tolled for any reason or that there are disputed facts that bear on the application of the statute of limitations, so that defense can be addressed in the context of this motion to dismiss. *See Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012) (citing *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir.2009)).

but that does not stop the statute of limitations clock from running. Unable to overcome the statute of limitations in this way, his claim is barred.

Because this Court dismisses Heabler's complaint for the above reasons, it unnecessary to reach the defendants' abstention argument.

*   *   *

For the reasons set forth above, the defendants' motion to dismiss is granted. And because the ground for dismissal is not a defect that repleading will cure, the dismissal is with prejudice.

Date: September 24, 2013

John J. Tharp, Jr.
United States District Judge